[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This controversy centers around the proper measure of damages for a conversion. The plaintiff, Gateway Bank, alleged in a three count complaint directed to J.T.'s Automotive (JTA), of Norwalk, and John J. D'Abundo, that JTA executed a retail sales and installment loan contract on May 5, 1989, pursuant to which Dean Leasing Corporation loaned the defendant JTA the sum of $32,439.20 in order to permit JTA to purchase a 1989 Nissan flatbed truck, and that the contract had been sold to plaintiff who was the holder thereof. Plaintiff alleges that the note became overdue and in default in June, 1990, and that as a result JTA owes principal on the note, as well as interest, late charges, attorneys' fees and costs. A default entered for failure of JTA to appear and in April, 1992, a judgment was rendered against it with regard to the first count. This count is not an issue in this case.
The second count is directed to John J. D'Abundo, and alleges that JTA gave a security interest to the plaintiff consisting of the Nissan truck, and that D'Abundo, upon learning that the plaintiff intended to repossess its collateral, "dismantled and destroyed said collateral" by cutting off the flatbed portion of the truck, allowing only the cab and chassis to be subsequently repossessed. This count further alleges that D'Abundo's actions were wanton, wilful, and malicious, entitling plaintiff to punitive and treble damages, in addition to compensatory damages. A third count alleging that D'Abundo was the sole proprietor of JTA was withdrawn and is not involved in this controversy.
On August 12, 1992, D'Abundo filed an amended special defense directed to the second count alleging that he had loaned JTA $15,000 to be used as a downpayment for the purchase of the Nissan truck in question, that he was a "second lienholder," and CT Page 1036 that the flatbed he admittedly removed from the truck "was not a part of the collateral securing the Promissory Note" held by the plaintiff. In a reply to this special defense, the plaintiff contended that the flatbed was in fact a part of the collateral securing its promissory note.
This case was referred to Attorney Barbara A. LaVoy, an attorney trial referee, in accordance with General Statutes52-434(a) and Practice Book 428 et seq. The referee conducted a trial and then filed a report containing a number of findings of fact, including: (1) that the truck in question was purchased for approximately $48,000, $16,000 of which came from D'Abundo, and approximately $32,000 of which was financed by Dean Leasing, plaintiff's assignor; (2) that the truck was equipped with certain accessories worth approximately $12,000, which included, among other things, a flatbed, an hydraulic tow bar, a light bar, and cruise, strobe and spot lights; (3) that the security agreement provided that it "includes all accessories, equipment and replacement parts in or to the collateral;" (4) that prior to turning the truck over to plaintiff's repossession company, D'Abundo had removed the flatbed, hydraulic tow bar, cruise, strobe and spot lights, tool box, throttle control, mud flaps, and new tires which he replaced with old, bald tires; (5) that D'Abundo believed, albeit erroneously, that he had the right to the accessories by virtue of his lien for $16,000; and (6) that the cab of the truck was taken from JTA and removed to the repossession company's place of business in New Haven and has not been sold, although it was shown on two occasions to possible purchasers.
Based on these findings of fact, the attorney trial referee concluded: (1) that the flatbed and all other accessories on the truck were an integral part of the collateral held by plaintiff; (2) that because there had been a default in payment of the promissory note, the plaintiff had the right to repossess the Nissan truck, including the flatbed and other accessories; (3) that D'Abundo had committed a conversion because the plaintiff had the right to possession of the entire collateral, and that D'Abundo had wrongfully disposed of plaintiff's rights to the truck, including its accessories; (4) that with respect to damages, the plaintiff was entitled only to nominal damages because the value of the so-called accessories removed from the truck by D'Abundo was determined to be $12,000, which is less than his lien of $16,000; (5) that the plaintiff "failed to establish that it suffered substantial loss, or any real loss at CT Page 1037 all, as a result of [D'Abundo's] act;" and (6) that plaintiff was not entitled to punitive damages because it had not proved that D'Abundo's actions were reckless, wanton, malicious or evil.
The plaintiff, pursuant to Practice Book 438, moved to correct the report in two respects. The first was that the attorney trial referee had miscalculated the amount of damages by only awarding nominal damages to the plaintiff. The second request to correct involved the referee's conclusion that plaintiff was not entitled to punitive damages because D'Abundo had not acted recklessly or wantonly in removing the accessories, including the flatbed, from the truck in question. The referee declined to make any corrections to her report.
The plaintiff did not file exceptions to the referee's report pursuant to Practice Book 439. It therefore follows that the factual findings by the referee must stand uncorrected. Our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." Ruhl v. Fairfield, 5 Conn. App. 104, 106, 496 A.2d 994 (1985). Failure to file exceptions in the proper manner in effect constitutes a "waiver" of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989).
This court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case is a limited one in any event. The Supreme Court has stated that: (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). According to Bernard v. Gershman, supra, 656, this court's task is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The plaintiff also filed objections to the acceptance of the report pursuant to Practice Book 440, which again challenge the referee's conclusions that the plaintiff is entitled only to nominal and not punitive damages. CT Page 1038
"Conversion occurs when one assumes and exercises the right of ownership over property belonging to another, without authorization and to the exclusion of the owner's rights . . . The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own." (Citation omitted.) Plikus v. Plikus, 26 Conn. App. 174, 180, 599 A.2d 392 (1991). The attorney trial referee concluded that D'Abundo's actions in removing the flatbed and other accessories constituted a conversion as against the plaintiff as first lienholder, and D'Abundo has not challenged that conclusion. The only issue therefore is the amount of damages to which the plaintiff is entitled.
"The general rule is that the measure of damages in a conversion is the value of the goods at the date of the conversion." Id., 178. The referee found that the flatbed and other accessories were worth $12,000, and she found that plaintiff was entitled to immediate possession of such accessories and the truck, so it would appear to follow that the referee believed that plaintiff was entitled to at least $12,000. However, rather than awarding $12,000, the referee concluded that a different rule applies where the converter, D'Abundo, also had a lien on the converted property. The referee stated that when an "owner," by which she apparently meant D'Abundo, commits a conversion, "the plaintiff is not entitled to recover the full value of the property" but rather is "limited by the value of his interest in the property, as well as by the value of the property convened," citing an article in 18 Am.Jur.2d Conversion 130 (1985). Since D'Abundo had a lien of $16,000 and the value of the items he removed from the truck was $12,000, the attorney trial referee reasoned that the plaintiff "suffered only nominal damages."
In response, plaintiff argues that the American Jurisprudence article only refers to a victim of a conversion not being entitled to recover more than the value of the victim's interest in the converted property, and therefore is irrelevant to the instant case. The plaintiff claims that the article does not stand for the proposition that a second lienholder's interest in the first lienholder's collateral should be deducted from the first lienholder's damages. Plaintiff also contends that before D'Abundo can satisfy his second lien, plaintiff's superior lien must be satisfied in full. The plaintiff claims that the referee found that its security interest and lien applied to the whole CT Page 1039 truck, and was superior to D'Abundo's lien, "[y]et D'Abundo was permitted to satisfy his second lien, to the extent of $12,000, by stealing portions from the truck," a result which the plaintiff describes as "absurd" and amounting to a ruling that an inferior lienholder can satisfy his interest at any time by conversion.
In response D'Abundo argues that General Statutes 42a-9-315, which deals with priorities when goods are commingled or processed, applies to this case. D'Abundo claims that plaintiff's $32,000 lien and his lien of $16,000 "rank equally according to the ratio that the cost of the goods to which each interest originally attached bears to the cost of the total product or mass." D'Abundo also argues that since plaintiff failed to prove that the items it repossessed, ie., cab and chassis, were valued at less than its lien of $32,000, it is entitled to nominal damages only. D'Abundo also contends that since the plaintiff failed to provide any notice of a sale of the cab and chassis, a presumption has arisen that the collateral repossessed was worth at least the amount of the debt, citing Connecticut Bank Trust v. Incendy, 207 Conn. 15, 540 A.2d 32 (1988).
A starting point for a review of the attorney trial referee's decision is the article in American Jurisprudence upon which she relied in order to conclude that plaintiff suffered only nominal damages. This article stated in pertinent part that: "[i]n an action for a conversion committed by an owner of an interest in the property . . . the plaintiff is not entitled to recover the full value of the property. The amount of recovery in such a case is limited by the value of his interest in the property, as well as by the value of the property convened." 18 Am.Jur.2d Conversions 130 (1985). The court finds that this statement refers to the fact that the amount of the plaintiff's recovery is limited by the value of the plaintiff's interest in the property, and does not stand for the proposition that the second lienholder can satisfy his subordinate lien to the exclusion of the superior lienholder. The referee found that the plaintiff was entitled to repossess the entire collateral to satisfy its debt, but could not do so because D'Abundo had wrongfully removed $12,000 worth of accessories, including the flatbed. Implicit in this conclusion is a finding by the referee that the truck with the accessories on it was worth less than the value of the outstanding debt, so it would follow that the truck without the accessories would also be valued at less than such debt. As noted above, the damages in a conversion are the value of the goods CT Page 1040 converted at the time of the conversion; Plikus v. Plikus, supra, 178; and the plaintiff should therefore recover $12,000." "[W]hen the debt owed the secured creditor is greater than the value of the collateral at the time of conversion, the creditor is entitled to recover the full amount of the value of the collateral with interest at the legal rate from the date of conversion." 68A Am.Jur.2d Secured Transactions 731 (1993).
The court finds that D'Abundo's reliance on General Statutes42a-9-315 is misplaced. This section of the Uniform Commercial Code refers to goods losing their identity by being commingled as "part of a product or mass." In the present case, the "goods" which were covered by the plaintiff's security agreement and any security interest defendant may have had was the truck itself, with accessories still intact. The referee found that D'Abundo wrongfully removed the flatbed and other accessories from the cab and chassis. Hence there was no commingling or loss of identity warranting application of 42a-9-315 and its rule that where there is more than one secured party they share ratably in the product.
D'Abundo's reliance on Connecticut Bank Trust Company v. Incendy, supra, is also misplaced. This case concerns the necessity of a separate notice of a private sale after repossessed property is not sold at a properly noticed public sale. The other aspect of the case involves the right of a creditor to a deficiency judgment when the creditor fails to give the debtor proper notice of an impending sale of the repossessed collateral. In the instant case, the referee found that no sale of the cab and chassis had occurred, and the plaintiff is not seeking a deficiency judgment, but simply the value of the part of its collateral that had been wrongfully converted by D'Abundo.
Accepting all the facts found by the referee, it appears that her conclusion that the plaintiff is entitled only to nominal damages is incorrect as a matter of law. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court has the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (Citations and internal quotation marks omitted.) Dills v. Enfield, supra, 713. Thus, the plaintiff is entitled to judgment in its favor for $12,000, the value of the goods at the time of conversion, plus interest thereon at the legal rate from CT Page 1041 January 23, 1991, the date of the conversion, which amounts to $3,622.96.
The remaining issue involves plaintiff's claim for punitive damages. In an action for conversion, "[p]unitive damages may be awarded upon a showing of fraud." Plikus v. Plikus, supra, 180. The referee found that the plaintiff was not entitled to punitive damages because D'Abundo had not acted fraudulently, but rather in the good faith belief that he had a right to enforce his lien by removing the accessories. This factual finding must remain unchallenged because no exception thereto was made by plaintiff as discussed previously. Therefore, judgment enters in favor of the plaintiff to recover consequential damages from defendant D'Abundo in the amount of $15,622.96, but punitive damages are not awarded.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 1st day of February, 1994.
William B. Lewis, Judge